UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


CALMES                                    CIVIL ACTION

VERSUS                                    NO: 12-281

JPMORGAN CHASE BANK ET AL.                SECTION: "J" (2)

### ORDER AND REASONS

Before the Court are Defendant's **Motion for Summary Judgment (Rec. Doc. 16)**, Plaintiff's opposition thereto **(Rec. Doc. 20)**, and Defendant's reply to same **(Rec. Doc. 23)**. Defendant's motion was set for hearing on Tuesday, April 16, 2013, on the briefs. The Court, having considered the motion and memoranda of counsel, the record, and the applicable law, finds that Defendant's motion should be **GRANTED** for the reasons set forth more fully below.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

This suit arises out of same-sex sexual harassment, retaliation, and constructive discharge claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). On January 27, 2012, Plaintiff Thomas Calmes filed his Complaint in this Court, naming JPMorgan Chase Bank,

1

N.A. ("Chase") and its employee, Dan Ritchel ("Mr. Ritchel"), as Defendants. On March 20, 2010, Plaintiff filed a notice of voluntary dismissal, which dismissed Mr. Ritchel from this suit. Therefore, the only remaining Defendant is Chase. Plaintiff's Complaint alleges that while he was an employee at Chase, he was sexually harassed by his supervisor, Mr. Ritchel. Plaintiff asserts that when he reported the harassment to a Chase human resources ("HR") representative, he was suspended. Plaintiff asserts that these actions were all in violation of Title VII. The relevant background facts in this case are as follows.

Plaintiff was an employee of Chase for over twenty years. From 2003 to 2009, Plaintiff served as a National Account Representative for the Chase At Work Program. Mr. Ritchel began serving as Plaintiff's supervisor in August 2009 and remained Plaintiff's supervisor until April 9, 2010, when Plaintiff was placed on administrative leave, with pay.[1]

Plaintiff contends that while serving as his supervisor, Mr. Ritchel intentionally harassed, humiliated, and belittled him. In particular, he describes the following instances of harassment as incidents that made him feel like his job was in jeopardy. First,

---

[1] Def. Ex. A Calmes Depo. Part 1, Rec. Doc. 16-4, p. 57; Def. Ex. B Reiger Decl., Rec. Doc. 16-6, p. 2.

Plaintiff asserts that on a visit to Louisiana, before becoming Plaintiff's supervisor, Mr. Ritchel once remarked to a Chase customer that Plaintiff was "only good for" picking up vomit.[2] Second, Plaintiff contends that on Mr. Ritchel's first visit to New Orleans as his supervisor, while Mr. Ritchel was riding with Plaintiff through New Orleans, Mr. Ritchel badgered Plaintiff in a facetious and sarcastic manner about how Plaintiff knew to take a different route to their intended location.[3] Third, Mr. Ritchell allegedly referred to Plaintiff as "Eeyore" from Winnie the Pooh, accusing Plaintiff of never having anything positive to say and telling Plaintiff that he reminded him of his (Mr. Ritchel's) mother.[4] Fourth, Plaintiff asserts that later, on the same day that Mr. Ritchel referred to Plaintiff as Eeyore, while Plaintiff was driving Mr. Ritchel, Mr. Ritchel began laughing mockingly at Plaintiff, telling Plaintiff that he was "so funny" and that he (Mr. Ritchel) "just like[d] f***ing with

---

[2] At the time that this incident occurred, Mr. Ritchel served as a National Account Representative at Chase and he was located out of Dallas. Mr. Ritchel had made a visit to Covington to speak to a potential client, and Plaintiff was his point of contact with the client. Mr. Ritchel made the comment after learning from the same client that on a previous occasion Plaintiff had helped the Chase client clean up after a child who had gotten ill at the store. Def. Ex. A Calmes Depo. Part 1, Rec. Doc. 16-4, pp. 36-42.

[3] Def. Ex. A Calmes Depo. Part 1, Rec. Doc. 16-4, p. 46.

[4] Def. Ex. A Calmes Depo. Part 1, Rec. Doc. 16-4, pp. 48 -49 ("He just kept telling me, oh, woe to me, oh woe to me, mocking me and making fun of me. Calling me Eeyore and reminding me – telling me how much I reminded him of his mother.").

[Plaintiff]."[5] Fifth, Plaintiff states that on various occasions Mr. Ritchel would make comments on the phone in which he told Plaintiff that he had to increase his productivity or he would "have a problem with" his job.[6] Sixth, Plaintiff asserts that once when the two men were visiting a client, Mr. Ritchel allegedly placed his hands on Plaintiff's chest and/or shoulders, adjusted Plaintiff's tie, and told Plaintiff "when you're with me, you need to look your best at all times."[7] Seventh, while leaving lunch with Plaintiff on one occasion, Mr. Ritchel told Plaintiff that he could not find his cell phone.[8] Mr. Ritchel then asked Plaintiff to walk back to his hotel with him to look for the phone.[9] When the men arrived at the hotel, Plaintiff explains that he sat down in the lobby and Mr. Ritchel "turned

---

[5] Def. Ex. A Calmes Depo. Part 1, Rec. Doc. 16-4, pp. 51 -52. Plaintiff's deposition testimony indicates that Mr. Ritchel continued to insult Plaintiff stating the following: "You're so much fun to f*** with. I just love f***ing with you, and I'm going to have fun f***ing with you."

[6] Def. Ex. A Calmes Depo. Part 1, Rec. Doc. 16-4, pp. 62-63 ("Comments on the phone about, you know, you better continue to increase your productivity and, if you don't, I'm not going to get my bonus, and if I don't get my bonus you're going to have a problem with your bonus and you're going to have a problem with your job.").

[7] Def. Ex. A Calmes Depo. Part 1, Rec. Doc. 16-4, pp. 57 -58. Plaintiff later notes that after making that statement, Mr. Ritchel followed-up by telling him "didn't your mother ever tell you that?"  Def. Ex. A Calmes Depo. Part 1, Rec. Doc. 16-4, p. 60.

[8] Def. Ex. A Calmes Depo. Part 1, Rec. Doc. 16-4, p. 65.

[9] Def. Ex. A Calmes Depo. Part 1, Rec. Doc. 16-4, pp. 65-67.

around and said, why don't you come up to my room."[10] When Plaintiff refused, Mr. Ritchel responded by asking, "are you sure you don't want to come up to my room?"[11] Lastly, Plaintiff explains that in January 2010, upon giving Mr. Ritchel a Christmas present, Mr. Ritchel told Plaintiff that "this means the world to me. . . . if I wasn't alone – if I was alone with you, I would give you a big hug and a kiss right now, but we're in public so I can't."[12] Plaintiff reports that due to these incidents and his own rejection of Mr. Ritchel's alleged advances, he felt that his job was in jeopardy.[13]

Plaintiff asserts that prior to December 2009, while he did not file a formal complaint against Mr. Ritchel, he informally spoke to an HR representative at Chase, Lee McConnell ("Ms. McConnell"), about the aforementioned incidents.[14] Later, on

---

[10] Def. Ex. A Calmes Depo., Rec. Doc. 16-4, p. 68.

[11] Def. Ex. A Calmes Depo. Part 1, Rec. Doc. 16-4, p. 68. When asked what he took Mr. Ritchel's comment to mean, Plaintiff stated that he "didn't take it to mean that he was asking me to help him look for a cell phone." Def. Ex. A Calmes Depo. Part 1, Rec. Doc. 16-4, p. 68. He later explicitly states that he took the comment to be a sexual advance. Def. Ex. A Calmes Depo. Part 1, Rec. Doc. 16-4, pp. 70-71.

[12] Def. Ex. A Calmes Depo. Part 1, Rec. Doc. 16-4, pp. 80-81.

[13] See Def. Ex. A Calmes Depo. Part 1, Rec. Doc. 16-4, pp. 71, 76-77, 91-92.

[14] Def. Ex. A Calmes Depo. Part 2, Rec. Doc. 16-5, pp. 2-3. While Plaintiff states that he had a conversation with the HR representative prior to December 2009, his later testimony indicates that he may not have spoken with her and/or he is unsure if he definitely had a conversation. However, for the purposes of

April 5, 2010, Plaintiff had a formal conversation with Ms. McConnell about the alleged harassment.[15] Plaintiff reports that the conversation was prompted by an email that he received from Mr. Ritchel on April 2, 2010.[16] Plaintiff explains that on April 2, 2010, Mr. Ritchel emailed him and told him to attend a meeting at the Severn branch office on April 7, 2010.[17] In response to the email, Plaintiff attempted to contact Mr. Ritchel several times to find out more about the meeting.[18] When Plaintiff was unable to contact Mr. Ritchel, he decided to speak with Ms. McConnell about the meeting.[19] Plaintiff explains that during the course of his conversation with Ms. McConnell, he also told her about the alleged harassment.[20] At some point before April 7, 2010, Plaintiff also had an additional conversation with Mr. Ritchel's supervisor, Travis Rieger, about the alleged

this motion, looking at the facts in the light most favorable to the Plaintiff, the Court will assume that Plaintiff spoke with HR prior to 2010, albeit informally.

[15] Def. Ex. A Calmes Depo. Part 2, Rec. Doc. 16-5, p. 10 - 11. This conversation is also documented by notes from Ms. McConnell and Ms. McConnell's own deposition.

[16] Def. Ex. A Calmes Depo. Part 2, Rec. Doc. 16-5, pp. 10 - 12.

[17] Def. Ex. A Calmes Depo. Part 2, Rec. Doc. 16-5, p. 11.

[18] Def. Ex. A Calmes Depo. Part 2, Rec. Doc. 16-5, pp. 11-12.

[19] Def. Ex. A Calmes Depo. Part 2, Rec. Doc. 16-5, p. 12.

[20] Def. Ex. A Calmes Depo. Part 2, Rec. Doc. 16-5, pp. 11-13.

6

harassment.[21]

On April 7, 2010, Plaintiff met with a representative from Chase's global security investigations team at the Severn branch office and was informed that he was being investigated for possibly padding his production and expense reports.[22] On April 9, 2010, after the meeting but before the investigation was terminated, Plaintiff was contacted by Travis Rieger, and told that he was being suspended.[23] The decision to suspend Plaintiff was made by Travis Riegar's supervisor, Kim Bera.[24] As of April 11, 2010, Plaintiff was suspended from Chase, with pay, pending investigation of the alleged false reporting of production and expenditure reports.[25] On April 12, 2010, Plaintiff emailed Ms. McConnell, Travis Rieger, and Mr. Ritchel a copy of a letter dated April 9, 2010, detailing Mr. Ritchel's alleged

_____

[21] Def. Ex. A Calmes Depo. Part 2, Rec. Doc. 16-5, pp. 13-15.

[22] Def. Ex. A Calmes Depo. Part 2, Rec. Doc. 16-5, pp. 19 - 21.

[23] Def. Ex. A Calmes Depo. Part 2, Rec. Doc. 16-5, p. 24.

[24] Def. Ex. A Calmes Depo. Part 2, Rec. Doc. 16-5, p. 23.

[25] There is evidence of a significant dispute in the record as to whether Plaintiff remained suspended until his resignation in June 2010. Chase presents evidence that indicates that Plaintiff filed for disability leave, and that his suspension was thereby converted to medical leave under Chase's FMLA policy. See Def. Ex. C De La Cruz Decl., Rec. Doc. 16-7, p. 2. Plaintiff contends that he did not apply for disability leave and that, to his knowledge, he was suspended from April 9, 2010 until he resigned on June 10, 2010. See Def. Ex. A Calmes Depo. Part 2, Rec. Doc. 16-5, pp. 36-43.

harassment.[26] On June 10, 2010, Plaintiff submitted his letter of resignation to Miriam de la Cruz, Chase's HR Manager.[27] The letter notified the company that Plaintiff's last day with Chase would be June 11, 2010, as he had found other employment.[28] On June 15, 2010, Plaintiff filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC").[29] Plaintiff received a "Right to Sue" letter on November 16, 2011.[30]

Defendant filed the instant motion on March 26, 2013. On April 4, 2013, Plaintiff filed a motion requesting a continuance of the hearing date on Defendant's motion. On April 9, 2013, the Court granted Plaintiff's motion, allowing him an extension until April 16, 2013. On April 12, 2013, Plaintiff filed his opposition. Defendant replied on April 24, 2013.

## THE PARTIES' ARGUMENTS

Defendant requests that this Court dismiss Plaintiff's claims of sexual harassment, retaliation, and constructive discharge on the following grounds. First, Defendant argues that

---

[26] Def. Ex. A Calmes Depo. Part 2, Rec. Doc. 16-5, pp. 29-30.

[27] Def. Ex. A Calmes Depo. Part 2, Rec. Doc. 16-5, p. 44.

[28] Pl. Ex. B, Rec. Doc. 20-3, p. 1.

[29] Pl. Ex. C, Rec. Doc. 20-4, p. 1.

[30] Pl. Ex. D, Rec. Doc. 20-5, p. 1.

Plaintiff cannot prove that Mr. Ritchel's alleged conduct was based on sex. In particular, Defendant asserts that under Title VII, in order to prove a same-sex sexual harassment claim Plaintiff must show that "the alleged harasser made explicit or implicit proposals of sexual activity," and provide evidence that the harasser was homosexual. Def.'s Mem. in Supp., Rec. Doc. 16-1, pp. 6-7. Defendant contends that Plaintiff must present evidence which shows that the harasser actually intended to have sexual contact with the Plaintiff. While Defendant concedes that Mr. Ritchel is openly gay, it argues that the first five incidents that Plaintiff complained of clearly have nothing to do with Plaintiff's sex. Furthermore, Defendant notes that in Plaintiff's own deposition he states that he does not know why Mr. Ritchel would have engaged in the aforementioned behavior. As to the last three instances, Defendant argues that the hotel room invitation, the "look your best" comment, and the "kiss and hug" comment are innocuous. Defendant contends that they are easily justified for reasons unrelated to sex and that, to the extent that they could be construed as being based on sex, Mr. Ritchel's other degrading and rude remarks negate any potential sexual implication.

　　Second, Defendant argues that even if Plaintiff could prove

that the conduct was "based on sex," he cannot show that the conduct in question was severe or persuasive. Defendant contends that Title VII harassment claims are only actionable if the harassment is severe and persuasive. Defendant asserts that none of the alleged conduct in this case is severe because it did not involve any touching of private parts or any direct requests for sexual contact. Likewise, Defendant argues that the conduct was not pervasive because the instances described by the Plaintiff are very limited in both their scope and frequency.

Third, Defendant avers that even if Plaintiff could show that Mr. Ritchel's conduct was actionable under Title VII, he could not prove that it was actionable against Defendant, because the evidence clearly shows that Plaintiff unreasonably failed to take advantage of corrective opportunities that Defendant provided. Specifically, Defendant asserts that Plaintiff did not suffer a tangible employment action and that once Defendant was notified of the alleged harassment, it took reasonable care to prevent and address it. Defendant contends that Plaintiff did not suffer a tangible employment action because there was no significant change in Plaintiff's employment status and/or his compensation and benefits. Likewise, Defendant argues that at the time of the alleged harassment it had a "Harassment-Free

Workplace Policy" in place which instructed employees on who to contact in the event of harassment. Defendant argues that Plaintiff was aware of this policy and of the reporting procedures; however, Defendant asserts that Plaintiff failed to take advantage of the policy. Therefore, Defendant contends that it cannot be held liable for Mr. Ritchel's alleged harassment of Plaintiff.

Fourth, Defendant contends that Plaintiff's wrongful termination and constructive discharge claim should be dismissed because Plaintiff failed to exhaust his administrative remedies. Specifically, Defendant asserts that Plaintiff's EEOC claim did not complain of retaliation or constructive discharge; rather, it just addressed Plaintiffs harassment claims. Therefore, Defendant asserts that Plaintiff's termination and constructive discharge claims are procedurally barred. Likewise, Defendant also argues that if Plaintiff's claims are not procedurally barred, they still fail as a matter of law because Defendant never terminated Plaintiff. Instead, Defendant argues that Plaintiff voluntarily resigned. As proof, Defendant points to the fact that it paid Plaintiff from the time that Plaintiff was suspended until the time it received Plaintiff's resignation letter. Likewise, Defendant notes that it also sent multiple notices requesting

11

that Plaintiff complete his claim for medical leave, which Defendant contends it would not have done if it had considered Plaintiff's employment to be terminated.

Fifth, with regard to Plaintiff's retaliation claim, Defendant argues that Plaintiff cannot establish that his paid suspension constituted a materially adverse employment action. Defendant explains that Plaintiff was placed on paid leave pending an investigation into his expense report, and that Plaintiff has no evidence of a causal connection between this suspension and Plaintiff's participation in a protected activity. Defendant asserts that even though Plaintiff's protected activity occurred on April 5, 2010, the investigation into Plaintiff's expenditure reports began before that date. Likewise, Defendant also avers that the April 7, 2010 meeting was scheduled before Plaintiff's meeting with Ms. McConnell took place. Defendant asserts that the intervening April 7, 2010 meeting and Plaintiff's failure to cooperate at that meeting preclude Plaintiff from establishing the necessary causal connection between the protected activity and the suspension.

Sixth, Defendant asserts that even if Plaintiff could establish a prima facie case of retaliation, Defendant has satisfied its own corresponding burden of articulating a

legitimate nonretaliatory reason for suspending Plaintiff, and Plaintiff cannot show that that reason is merely pretext. Specifically, Defendant contends that in order to prove that the reason proffered by Defendant's for the suspension was merely pretext, Plaintiff must submit legitimate summary judgment evidence of (1) disparate treatment or (2) a showing that the employer's explanation is false. Defendant argues that an employee's subjective belief alone is insufficient to make an issue for the jury. Defendant contends that Plaintiff does not have proof of either of the foregoing and, therefore, can not proceed to a jury with his retaliation claim.

Lastly, Defendant argues that Plaintiff's constructive termination claim fails as a matter of law. Defendant asserts that in order to prove a constructive discharge claim, "Plaintiff must show 'working conditions . . . so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" Def.'s Mem. in Supp., Rec. Doc. 16-1, p. 24 (quoting Nassar v. Univ. of Tex. Sw. Med. Ctr., 674 F.3d 448, 453 (5th Cir. 2012)). Defendant contends that because Plaintiff cannot show that any of the alleged harassment was severe and pervasive, he likewise cannot present enough evidence to establish that he was constructively discharged.

In response, Plaintiff argues that there are numerous issues of material fact which preclude summary judgment. Specifically, in response to Defendant's argument that Plaintiff has failed to exhaust his administrative remedies, Plaintiff asserts that he used the term "retaliation" on all four pages of his EEOC claim and that the facts clearly support such a claim. Plaintiff also contends the same for his hostile work environment claim. Moreover, Plaintiff asserts that "[i]t is well settled that a retaliatory discharge claim may not have to be specified in an EEOC charge." Pl.'s Opp., Rec. Doc. 20, p. 9. Plaintiff contends that the charge may be raised for the first time in federal court. Thus, Plaintiff argues that even if he had not specifically used the word retaliation in the EEOC charge, he would still be able to plead it in the current suit.

Next, Plaintiff asserts that the evidence presented supports the conclusion that Plaintiff was constructively discharged based on a tangible adverse employment action. First, Plaintiff avers that his suspension clearly constituted a tangible adverse employment action. Second, Plaintiff contends that after he was suspended  it is evident that Defendant instituted a scheme against him whereby it knew that he would be forced to seek another job. Plaintiff asserts that despite the fact that

14

Defendant was aware of his sexual harassment, Defendant "waited" Plaintiff out, forcing him to look for other employment. Thus, Plaintiff argues that either Plaintiff's suspension constituted a tangible employment action, or that Plaintiff's suspension plus Defendant's subsequent failure to take any action for two months created a tangible adverse employment action. Plaintiff contends that because Defendant did take such an action, it should be held strictly liable. In making this argument, Plaintiff cites the following facts as being indicative of why Plaintiff's resignation was reasonable, and Defendant's actions therefore resulted in a constructive discharge:

1. Plaintiff was a 20 plus year employee with no history of any disciplinary issue;

2. Plaintiff had discussions with, and complained to, Leila McDonell regarding harassment by Dan Ritchel and fear of losing his job as late as April 5, 2010 and McDonnell conveyed same to Travis Reiger on the same day via email;

3. On April 7, 2010, Plaintiff was interrogated by Defendant's Global Security regarding alleged fraud in mileage reimbursement expense reporting;

4. Plaintiff was advised by previous management that he could work from his LaPlace, LA home;

5. On April 9, 2010, Travis Reiger placed Plaintiff on paid suspension pending the investigation of alleged fraudulent mileage expense reports;

6. Plaintiff appeared at a second meeting with security in late April 2010 as advised by Miriam De La Cruz in human resources; however, B.J. Turner did not show up;

7. Miriam De La Cruz advised Plaintiff that she would advise him of any determination regarding the investigation and his employment; however, Plaintiff never heard back from her as late as June 10, 2010;

8. As late as June 10, 2010, Plaintiff was never re-instated to his employment position by Defendant.


Pl.'s Opp., Rec. Doc. 20, p. 14. Plaintiff argues that based on these facts "any reasonable person in his position would have [resigned] due to intolerable circumstances," and that the aforementioned actions were "tantamount to a firing for making complaints of sexual harassment." Pl.'s Opp, Rec. Doc. 20, pp. 14-15.

16

Additionally, Plaintiff asserts that he was actually, not just constructively, terminated by Defendant. Specifically, Plaintiff points to employment documentation identified by Ms. McConnell which purportedly indicates that Plaintiff was terminated for falsifying documents. Plaintiff asserts that "Defendant's actions in noting 'termination' on June 12, 2010 [paperwork], after Plaintiff's alleged June 10, 2010 resignation notification, leave little doubt that it's placing Plaintiff on paid suspension for nearly two months after his filing of complaints against Ritchel was a tangible adverse employment action." Pl.'s Opp., Rec. Doc. 20, p. 14. Likewise, Plaintiff contends that Defendant's justification for terminating Plaintiff is a pretext for unlawful discrimination. Plaintiff argues that the simple facts of this case indicate that "it is more likely than not" that Defendant suspended Plaintiff due to the harassment. Plaintiff states that the pertinent facts are that,

> 1) [Plaintiff] had an exemplary record with the company; 2) [Plaintiff] complained of sexual harassment and hostile environment to management; 3) a subsequent investigation of Plaintiff was commenced by Defendant of Plaintiff for alleged fraud with little to no real

investigation as to the accusations of Plaintiff of
harassment; 4) Plaintiff was subsequently suspended for
over two months without evidence of further or actual
investigation ongoing into Plaintiff's alleged fraud;
and 5) Defendant's own business records [] clearly
indicate that Plaintiff was terminated by Defendant as
of July 12, 2010.

Pl.'s Opp., Rec. Doc. 20, p. 17.

Furthermore, Plaintiff contends that he has presented sufficient evidence to make a prima facie case for unlawful retaliation. Plaintiff argues that at this stage of the proceedings his burden of proof is de minimus and that as long as he has proffered some competent evidence then it is sufficient to prevent summary judgment. Plaintiff asserts that there is evidence in the record, namely his own deposition testimony, which indicates that he spoke to Ms. McConnell before April 5, 2010, and that she did not take his complaints seriously and/or investigate them further. Plaintiff contends that this shows that Defendant was aware of the harassment and that a causal connection exists between the protected activity and the adverse employment action. Plaintiff contends that informal complaints to

management are protected activities.

Lastly, with regard to Defendant's arguments about Plaintiff's harassment claim, Plaintiff asserts that he has presented evidence that supports his subjective belief that the alleged harassment was sexual in nature. Likewise, Plaintiff contends that objectively, looking at the behavior on whole, a reasonable person would also think that the behavior in question was sexually motivated. Plaintiff contends that Mr. Ritchel's allegedly negative and insulting acts were merely retaliation at Plaintiff for his rejection of Mr. Ritchel's corresponding sexual advances. Plaintiff asserts that the acts in question are not typical in the professional setting that the men worked in and, therefore, can only be interpreted as sexual harassment.

## DISCUSSION

### A.   Legal Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any

material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." Id. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may

satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See, e.g., id. at 325; Little, 37 F.3d at 1075.

**B.   Title VII Same-Sex Sexual Harassment Claim**

In a same-sex sexual harassment case the court first determines whether the conduct in question constitutes discrimination based on sex. La Day v. Catalyst Tech., Inc., 302 F.3d 474, 478 (5th Cir. 2002). The United States Supreme Court has outlined three ways in which a plaintiff can show that the alleged harassment was based on sex. Id. First, the plaintiff may show "that the alleged harasser made 'explicit or implicit proposals of sexual activity' and provide 'credible evidence that the harasser was homosexual.'" Id. (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). Second, the plaintiff "can demonstrate that the harasser was 'motivated by general hostility to the presence of [members of the same sex] in

the workplace.'" Id. (alterations in original). Third, the plaintiff "may 'offer direct, comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace.'" Id. If the Court determines that any of these conditions are met and that the conduct in question is therefore based on sex, the court may move on to the second part of the analysis, i.e. whether the conduct meets the standards for either *quid pro quo* harassment or a hostile work environment claim. Id. A plaintiff must satisfy both parts of this analysis in order to have an actionable Title VII same-sex sexual harassment claim. Id.

Under Title VII, sexual harassment is only actionable against an employer if there is evidence of *quid pro quo* harassment or evidence of a hostile work environment. See Casiano v. AT&T Corp., 213 F.3d 278, 283-84 (5th Cir. 2000). In order for a plaintiff to show that he was subjected to *quid pro quo* harassment, the plaintiff must present evidence that he was subject to a "tangible employment action that resulted from his acceptance or rejection of his supervisor's alleged sexual harassment." LaDay, 302 F.3d at 481 (internal quotations omitted). A clear showing of a tangible employment action results in *per se* vicarious liability for the employer. Casiano, 213 F.3d

22

at 283-84. To prove a hostile work environment claim, a plaintiff must show that the harassment was so severe and pervasive that it created an abusive work environment. <u>Casiano</u>, 213 F.3d at 284; <u>Alleman v. Louisiana Dep't of Econ. Dev.</u>, 698 F. Supp. 2d 644, 658 (M.D. La. 2010) (citing <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17 (1993)). Where a plaintiff has proven that there was a hostile work environment, plaintiff's "employer may avoid liability by raising a two-pronged affirmative defense: '(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" <u>Harper v. City of Jackson Mun. Sch. Dist.</u>, 149 F. App'x. 295, 298-99 (5th Cir. 2005) (quoting <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 807 (1998)). This defense is only available in a hostile work environment claim. <u>Casiano</u>, 213 F.3d at 284.

In the instant case, because the Court finds that Plaintiff has failed to provide sufficient evidence that he suffered from either *quid pro quo* harassment or a hostile work environment, the Court declines to address the question of whether the alleged harassment was based on sex. Instead, for the purposes of this

23

analysis only, the Court will assume, without finding, that the harassment was based on sex and  move directly into its analysis of Plaintiff's *quid pro quo* and hostile work environment claims, which are dispositive.

### 1.        Tangible Employment Action

"'A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" La Day, 302 F.3d at 481-82 (5th Cir. 2002) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). In most cases, a tangible employment action results in direct economic harm. Ellerth, 524 U.S. at 761-62. In order to prove that a tangible employment action has occurred, the plaintiff must show that the  action resulted from the plaintiff's "acceptance or rejection of his supervisor's alleged sexual harassment." Casiano, 213 F.3d at 283.

In the instant case, it is undisputed that Plaintiff was suspended with pay on April 9, 2010, pending investigation of his expense reports.[31] Likewise, it is undisputed that Kim Bera, not

_____

[31] Def. Ex. A Calmes Depo. Part 2, Rec. Doc. 16-5, p. 24.

24

Mr. Ritchel, made the decision to suspend Plaintiff.[32]
Furthermore, although Plaintiff has attempted to create a factual
dispute as to the circumstances of his resignation by claiming
that Defendant's records show that he was actually terminated, in
Plaintiff's own deposition testimony he clearly states that he
resigned from his employment with Defendant on June 10, 2010,
after finding other employment.[33] Thus, this Court cannot say
that Plaintiff has presented sufficient evidence that he suffered
a tangible employment action. In particular, there is no evidence
in the record that supports the conclusion that Defendant fired
Plaintiff, failed to promote Plaintiff, reassigned Plaintiff, or
caused any change in Plaintiff's benefits.[34]

To the extent that it can be argued that Plantiff's
suspension constitutes a significant change in employment status,
thereby qualifying as a tangible employment action, the Court
finds it important that the decision to suspend Plaintiff was
made by Kim Bera, not Mr. Ritchel. In particular, the Court looks

---

[32] Def. Ex. A Calmes Depo. Part 2, Rec. Doc. 16-5, p. 25; Def. Ex. B Reiger
Decl., Rec. Doc. 16-6, p. 3.

[33] Def. Ex. A Calmes Depo. Part 2, Rec. Doc. 16-5, p. 44 ("Q. All right.
And you notified the company in this letter that June 11th will be your last day
as you have found employment with another company, correct? A. Yes.").

[34] The Court notes that Plaintiff received his full salary while on
suspension and he also received incentive pay for the quarter. Def. Ex. C De La
Cruz Decl., Rec. Doc. 16-7, p. 3.

to the Fifth Circuit's discussion of tangible employment actions
in <u>Harper v. City of Jackson Municipal School District</u>. In
<u>Harper</u>, the court determined that the plaintiff had not made a
sufficient showing of a tangible employment action where she
failed to show that her direct supervisor, the alleged harasser,
actually imposed a significant change in employment status on
her. 149 Fed. Appx. at 299-300. Rather, the plaintiff in that
case had only shown that a different supervisor, not the alleged
harasser, had made decisions which significantly affected the
plaintiff's employment status. <u>Id.</u> Likewise, in <u>Casiano v. AT&T
Corp.</u>, the Fifth Circuit also found that there was no tangible
employment action where the plaintiff was denied access to a
training program due to a decision of another manager, not a
decision of the harassing supervisor. 213 F.3d at 284-85.
Consequently, this Court cannot find that a tangible employment
action was taken in the instant case as it was Kim Bera's
decision to suspend Plaintiff, not Mr. Ritchel's. <u>See</u> <u>Ellerth</u>,
524 U.S. at 761-62 (discussing the importance of the role of the
supervisor in tangible  employment decisions and noting that when
a tangible employment action is taken "the *supervisor* brings the
official power of the enterprise to bear on
subordinates"(emphasis added)); <u>Moss v. Wal-Mart Stores, Inc.</u>,

No. 04-3090, 2007 WL 846530, at *8 (E.D. La. March 19, 2007) (holding that there was no tangible employment action where the person making the decision to take the action in question was someone other than the alleged harasser). Without some evidence that it was Mr. Ritchel's decision to suspend Plaintiff, there is no evidence of a causal connection between Plaintiff's suspension and the actual harassment, i.e. there is no evidence that an action was taken as a result of "acceptance or rejection of his supervisor's alleged sexual harassment." Casiano, 213 F.3d at 283. Thus, the Court finds that Plaintiff has failed to establish *quid pro quo* harassment.[35]

### 2.        Hostile Work Environment

In  order  to  prove  the  existence  of  a  hostile  work

---

[35]  In addition, the Court also notes that it might be argued that Plaintiff's suspension constituted a tangible employment action because it is derivative of Mr. Ritchel's initial decision to report the alleged inconsistencies in Plaintiff's expense reports. The Court finds that a tangible employment action requires more than a decision to have someone investigated. See Ellerth, 524 U.S. at 761 (discussing what constitutes a tangible employment action and noting that "a bruised ego," "demotion without change in pay, benefits, duties, or prestige," and "reassignment to more inconvenient job" are all insufficient to constitute a tangible employment action). In particular, the Court notes that the initiation of an investigation in and of itself would not necessarily lead to a termination, demotion, or any other significant change in Plaintiff's employment status. In particular, the evidence in the record supports Defendant's assertions that the suspension was not only a result of the investigation, but also of Plaintiff's own failure to comply with the investigation by not completing a written statement at the April 7, 2010 meeting. Def. Ex. B, Reiger Decl., Rec. Doc. 16-6, p. 3 ("As a result of the ongoing GS&I investigation and Mr. Calmes's failure to cooperate, my supervisor, Kim Bera, informed me that Mr. Calmes should be placed on paid administrative leave."). Plaintiff has not offered any testimony or other evidence contradicting this assertion. Thus, the facts of this case indicate that it took an investigation plus to lead to any type of change in Plaintiff's employment.

environment, a plaintiff must demonstrate that the alleged harassment was severe or pervasive. LaDay, 302 F.3d at 482. Plaintiff must show that the environment was both "'objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" Id. (quoting Butler v. Ysleta Indep. Sch. Dist., 161 F.3d 263, 269 (5th Cir. 1998)). In order to determine whether an environment is sufficiently hostile or abusive, courts must look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher, 524 U.S. at 787-88 (internal quotations omitted). The Supreme Court has cautioned that Title VII "does not prohibit 'genuine but innocuous difference in the ways men and women routinely interact with members of the same sex and of the opposite sex.'" Id. at 788 (quoting Oncale, 523 U.S. at 81). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. (internal quotations omitted).

It is evident from Plaintiff's deposition testimony that he

28

found Mr. Ritchel's conduct to be subjectively offensive; therefore, the question before the Court is whether Mr. Ritchel's conduct was also objectively offensive. This Court finds that it was not.

First, of the eight instances of harassment cited by Plaintiff, only three over an eight month span of time can be considered sexual in nature: (1) the "hug and kiss" incident, (2) the "look your best for me incident," and (3) the hotel room incident. In <u>Love v. Motiva Enterprises, LLC</u>, the Fifth Circuit affirmed this Court's finding that alleged sexual harassment was not severe and pervasive. 349 F. App'x. 900, 902 (5th Cir. 2009). In that case, the Plaintiff presented proof of at least twenty-four incidents of alleged sexual harassment. <u>Id.</u> at 902-03.Thus, in the instant case, it hardly seems that three or even eight incidents would suffice to meet the pervasiveness threshold. Likewise, in <u>Love</u>, this Court also found that the alleged conduct was not severe when the harasser did not actually touch the plaintiff's private parts or make direct requests for sexual conduct. <u>Love</u>, No. 07-5970, 2008 WL 4286662, at *8 (E.D. La. Sept. 17, 2008). In this case, Plaintiff has also failed to allege any touching of private parts or any direct requests for sexual contact. Thus, it appears that the conduct alleged also is

lacking in severity. Furthermore, as this Court explained in <u>Love</u>,

> Fifth Circuit precedent in the realm of sexual harassment claims has generally upheld summary judgment even on facts more egregious than those of the instant case. For example, in *Russel v. University of Texas of Permian Basin,* the appellate court upheld summary judgment of a same-sex sexual harassment claim under a hostile work environment theory based on lack of severity and pervasiveness when the female defendant had rubbed the inside of the female plaintiff's hand and thigh; twice intimated that she wanted to move to New York with plaintiff; stated that she would like to watch a movie in bed with plaintiff; and called plaintiff "honey" or "babe." 234 Fed. Appx. 195, 205 (5th Cir. 2007). The court based its holding on a comparison of the types of behavior at issue in *Russel* with those in *Hockman v. Westward Communications, LLC,* an opposite-sex sexual harassment claim under a hostile work environment theory. *Russel* 234 Fed. Appx. at 205 (citing *Hockman v. Westward Commc'ns, LLC,* 407 F.3d

317, 327-28 (5th Cir.2004). In *Hockman,* the Fifth
Circuit held as a matter of law that plaintiff could
not establish a hostile work environment claim based on
the fact that the male defendant had commented about
another female employee's body, slapped plaintiff's
buttocks with a newspaper, grabbed or brushed against
her breast and buttocks, and attempted to kiss her
once. *Hockman,* 407 F.3d at 328. The *Russel* Court held
that the alleged harassment by the female defendant
against the female plaintiff were "on the same plane as
those ... found insufficient to establish 'severe or
pervasive' harassment in *Hockman.*" *Russel,* 234 Fed.
Appx. at 205.

Id. Likewise, the allegations in this case are on the same plane
as, if not a lower plane than, those in Love, Russel, and
Hockman. Thus, the Court finds that the sexual harassment alleged
is neither severe or pervasive, and that Plaintiff has failed to
make a case for hostile work environment. Accordingly, the Court
finds that Plaintiff's sexual harassment claim should be
dismissed.

### C.   Retaliation and Constructive Discharge

### 1.        Exhaustion of Administrative Remedies

"Under Title VII, courts do not have jurisdiction to consider claims lodged under this statute when the aggrieved party has not first exhausted [his] administrative remedies by filing a discrimination charge with the EEOC." Harvill v. Westward Comm'n, LLC, 311 F. Supp. 2d 573, 585 (E.D. Tex. 2004) (citing Dollis v. Rubin, 77 F.3d 777, 781 (5th Cir. 1995)). Furthermore, when a civil suit is filed under Title VII, it is limited to "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970). If a plaintiff fails to state a particular claim in his EEOC charge or if that charge is not developed in the ensuing EEOC investigation, the plaintiff is precluded from bringing that claim in his civil suit. Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, 40 F.3d 698, 711-12 (5th Cir. 1994).

Defendant alleges that Plaintiff has failed to exhaust his administrative remedies as to his retaliation claim and his constructive discharge claim by neglecting to include them in his EEOC charge. With respect to Plaintiff's constructive discharge

claim, this Court agrees. In particular, the Court notes that despite the fact that Plaintiff's charge was filed with the EEOC on June 15, 2010, a mere three days after his resignation took effect, Plaintiff failed to inform the EEOC that he had resigned/felt that he had to resign as a result of Defendant's conduct. The charge itself contains allegations of harassment by Mr. Ritchel and details the subsequent behavior by Defendant; however, it fails to assert that such behavior caused Plaintiff to terminate his employment. As such, Plaintiff is precluded from bringing a claim for constructive discharge in the instant action.[36]

Furthermore, to the extent that Defendant argues that Plaintiff has failed to assert that he was terminated in retaliation for engaging in protected activity, this Court finds that Defendant's argument has merit. As noted, at no point in the

---

[36] In addition, the Court also notes that even if Plaintiff had exhausted his administrative remedies, his claim for constructive discharge would still fail. In particular, in order to prove a constructive discharge claim a plaintiff "must establish that the working conditions [] 'were so intolerable that a reasonable employee in [his] position would [have felt] compelled to resign.'" Harvill, 311 F. Supp. 2d at 585-86 (quoting Webb v. Cardiothoracic Surgery Assoc. of N. Tex., 139 F.3d 532, 539 (5th Cir. 1998)). In general, courts have found that the plaintiff must show more than allegations of harassment and "must demonstrate greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment." Id. at 586; See Suder, 542 U.S. at 133-34 ("to establish 'constructive discharge,' the plaintiff must make a further showing"). As this Court has already determined that Plaintiff cannot demonstrate sufficient conduct to show that a hostile work environment existed, it only follows that he cannot bring sufficient evidence to support a claim for constructive discharge.

EEOC charge does Plaintiff state that the alleged harassment has resulted in any definitive termination of his employment. Rather, Plaintiff explains that he has been suspended with pay and that Defendant is attempting to force him to take disability leave, not terminate him. Plaintiff does not contend that he has left and/or has been forced to leave. Accordingly, Plaintiff is also precluded from bringing a claim of retaliatory discharge. However, the Court also notes that Plaintiff's EEOC charge does clearly allege that Defendant retaliated against him by suspending him as well as by more intently scrutinizing his work. Thus, the Court does find that Plaintiff has exhausted his administrative remedies as to his more general claims of retaliation.

### 2.    Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) he participated in a protected activity; (2) his employer took an adverse employment action against him; and (3) a there is a causal connection between the protected activity and the adverse employment action. Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 484 (5th Cir. 2008). An employee engages in a protected activity when he opposes a practice that is unlawful under Title VII or makes a

charge, testifies, assists, or participates in an investigation, proceeding or hearing under Title VII. 42 U.S.C. § 2000e-3(a). To establish that an adverse employment action has occurred, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006). In general, an action is materially adverse if it would dissuade a reasonable employee from reporting a charge of discrimination to the EEOC, the courts, or their employer. Id. (citations omitted). "Petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." Id. (citations omitted). In the context of a retaliation claim, causation is a "but for" test in which the plaintiff must show that but for the protected activity, the adverse employment action would not have occurred. Mota v. Univ. of Tex. Houston Health Sci. Ctr., 261 F.3d 512, 519-20 (5th Cir. 2001) (internal quotations omitted). Once the plaintiff has presented a prima facie case, the burden shifts to the employer to present "a legitimate . . . non-retaliatory reason for its employment action." Aryain, 534 F.3d at 484 (quotations omitted). "If the employer meets this burden or production, the plaintiff then bears the burden of proving that the employer's reason is a pretext for the actual retaliatory

35

reason." Id.

Plaintiff has asserted that Defendant retaliated against him by suspending him after he reported the alleged sexual harassment to Ms. McConnell on April 5, 2010. Likewise, Plaintiff also alleges that Mr. Ritchel retaliated against him for rebuffing his advances by more intensely scrutinizing his expense and production reports. As to the second claim of retaliation, the Court finds that Plaintiff has not made a prima facie case to support his allegation of retaliation. In particular, there is no evidence in the record, other than Plaintiff's own allegation in his EEOC charge that he was treated differently, of how Mr. Ritchel treated other employees. See Little, 37 F.3d at 1075 (instructing the court to draw all reasonable inferences are drawn in favor of the nonmoving party, but noting that a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions). Thus, Plaintiff cannot support his assertion that Mr. Ritchel's scrutiny of his work and the ensuing investigation into his reports was retaliation for his rebuffs of the alleged sexual harassment.

Likewise, with regard to Plaintiff's claim that Defendant retaliated against him by suspending him, the Court also finds that Plaintiff has failed to present a prima facie case of

retaliation. In particular, the Court notes that Plaintiff cannot establish "but for" causation between the April 5, 2010 meeting with Ms. McConnell and the April 9, 2010 suspension with pay.[37] "To establish the causation element of his retaliation claim under Title VII, [Plaintiff] must present either 'direct evidence of retaliation' or 'circumstantial evidence creating a rebuttable presumption of retaliation.'" Washburn v. Harvey, 504 F.3d 505, 511 (5th Cir. 2007) (quoting Fabela v. Socorro Indep. Sch. Dist., 329 F.3d 409, 414-15 (5th Cir. 2003)). Plaintiff has presented no direct evidence of retaliation in this case. To the contrary, the only direct evidence of why Plaintiff was suspended indicates that he was suspended because he was under investigation for false reporting on his production and expense reports.[38] Likewise, the only circumstantial evidence that Plaintiff points to is the close temporal proximity of the protected activity and the suspension. While the Court acknowledges that in some cases

---

[37] The Court notes that Plaintiff has successfully shown that he participated in a protected activity when he reported the alleged harassment to Ms. McConnell on April 5, 2010. Likewise, the Court also notes that Plaintiff's subsequent suspension, even with pay, could be reasonably found to be an adverse employment action. See McCoy v. City of Shreveport, 492 F.3d 551, 561 (5th Cir. 2007) ("[P]aid administrative leave does not necessarily mean that [an employee] did not suffer an adverse employment action. . . .we recognize that it is at least a close question."(emphasis in original)). However, because it is clear that Plaintiff cannot make a prima facie case on other grounds, the Court declines to specifically make a finding on this issue today.

[38] Def. Ex. A Calmes Depo. Part 2, Rec. Doc. 16-5, p. 24; Def. Ex. B, Reiger Decl., Rec. Doc. 16-6, p. 3.

37

this may be sufficient, it finds that it is not sufficient in this one. See Washburn, 504 F.3d at 511. In particular, the Court notes that Plaintiff was notified about the April 7, 2010 meeting with the investigation team *prior* to his April 5, 2010 reporting of the alleged sexual harassment. Thus, the investigation that led to Plaintiff's eventual suspension had already been implemented before he engaged in the protected activity.

Moreover, even if the close temporal proximity cited by Plaintiff was sufficient to establish causation, Defendant's legitimate nonretaliatory reason for suspending Plaintiff—the pending expense report investigation—would overcome Plaintiff's evidence. In particular, there is ample evidence in the record which indicates that Plaintiff was suspended pending the investigation into his expense reports, not for any improper purpose. Furthermore, Plaintiff has not presented any evidence to the Court which would indicate that this reason was merely pretext. In particular, Plaintiff has presented no evidence that the explanation provided by Defendant is "false or unworthy of credence." Laxton v. Gap, Inc., 333 F.3d 572, 580 (5th Cir. 2003) (citations omitted). As noted Plaintiff himself appears to have actually believed that the explanation was truthful, citing it as

the reason he was suspended in his deposition.[39] Accordingly, the Court finds that Plaintiff has failed to sufficiently allege a claim for retaliation and, therefore, that the claim should be dismissed. Accordingly,

**IT IS ORDERED** that Defendant's motion is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant are **DISMISSED with prejudice.**

New Orleans, Louisiana this 1st day of May, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[39] Def. Ex. A Calmes Depo. Part 2, Rec. Doc. 16-5, pp. 24 - 25. The Court does note that Plaintiff argues in his opposition that if he had been terminated because of the expense report investigation, there would be more actual evidence of the investigation itself. In essence, Plaintiff argues that it is the absence of evidence that supports his pretext argument. The Court does not find credence with this argument. In particular, Plaintiff's Exhibit E, which is an HR form documenting Plaintiff's employment, outlines the progression of the expense report investigation from March 26, 2010, until April 28, 2010. Pl. Ex. E, Rec. Doc. 20-6, p. 1. Thus, contrary to Plaintiff's assertion there is evidence in the record that an actual investigation ensued, which supports Defendant's nonretaliatory reason for suspending Plaintiff.